UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SANDRA L. PARKER,
INDIVIDUALLY AND AS THE
ADMINISTRATRIX OF THE ESTATE OF
WILLIAM G. WILLIAMS, DECEASED                                              PLAINTIFF

V.                                                           CIVIL ACTION NO. 1:09CV71-JAD

LEE COUNTY, MISSISSIPPI, et al.                                            DEFENDANTS

## MEMORANDUM OPINION

William Glen Williams was being held in the Lee County jail after sentencing when he became ill on February 13, 2007 with flu-like symptoms. He was then administered a tuberculin skin test on February 14, 2007. This apparently triggered a severe allergic reaction. He was seen by a nurse practitioner, Nat Collins, a contractor with the Lee County jail. Collins diagnosed Williams as suffering from the flu. He prescribed medications for the treatment of flu and the allergic reaction. When examined by Collins, Williams' temperature exceeded 104 degrees. Both the jail nurse and nurse practitioner agree that his temperature should have been monitored. The nurse admits that she failed to recheck his temperature.

There is conflicting evidence in the record regarding whether Williams actually received all prescribed medications. It is undisputed that he became too weak at some point to walk to the door in his pod to receive his medications. Some inmate testimony states that he was allowed to go without medications after that point.

On the day and evening of Thursday, February 15, 2007 several inmates became alarmed about Williams' condition, and in a continuing effort to get Williams medical attention, reported his declining condition. No medical personnel checked on Williams that day or on Friday, February 16,

2007. One corrections officer is reported by multiple inmates to have loudly and profanely declared that he did not care if Williams died on the day before his death. This officer demanded that the other inmates cease calling Williams' mother or the phones would be cut off. Inmate testimony establishes that this officer made good on his threat to cut off the phones. Sometime during the day of Friday, February 16, 2010, Williams was found dead in his cell.

His mother filed this § 1983 action claiming that Williams' death was the result of deliberate indifference to his serious medical needs. The parties are in agreement that Williams died of bronchial pneumonia, with the defense expert contending that his condition was complicated by a rare allergic reaction to a tuberculin skin test. The defendants Lee County and its sheriff Jim Johnson have moved for summary judgment. They have filed a motion to strike portions of the plaintiff's response to the motion because it is not in affidavit form and because it was not previously disclosed in discovery.

The court has considered the motion and responses and the briefs and evidentiary matters before the court.

## SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56(e) Fed.R.Civ.P. requires that materials supporting or opposing the motion be admissible at trial. Material that would be inadmissible cannot be considered on a motion for summary judgment since it would not establish a genuine issue of material fact.

Summary judgment is proper "where a party fails to establish the existence of an element

essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus*., 839 F.2d 1121, 1122 (5th Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986)). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald,* 893 F.2d 787, 793(5th Cir. 1990).

The moving party must make an initial showing that there is no dispute of material fact or that there is a failure of proof of an element of the claim. If this showing is made, the nonmoving party must go beyond pleadings and submit specific evidence showing that there are one or more genuine issues of fact to be resolved by trial. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis omitted). While all facts are considered in favor of the nonmoving party, including all reasonable inferences therefrom, *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995), the nonmovant's burden, " is not satisfied with 'some metaphysical doubt as to the material facts,'" *Matsushita,* 475 U.S. at 586, by 'conclusory allegations,' *Lujan,* 497 U.S. at 871-73, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). *Little v. Liquid Air Corp.* at 1075.[1] A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d. 202(1986).

---

[1] Quoting from *Matsushita Electric Indus.Co. v. Zenith Radio Corp.,* 475 U.S. 574(1986) and *Lujan v. National Wildlife Federation*, 497 U.S. 871(1990).

Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact thatit could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

These standards have been applied in evaluating the evidence of record in support of and opposition to the motion for summary judgment.

## ANALYSIS

The plaintiff has conceded that the defendant Jim Johnson was not sufficiently involved with the treatment or denial of treatment of Williams to render him personally liable. On claims of personal liability, it is admitted that the sheriff is entitled to summary judgment.

The plaintiff, however, contends that both the sheriff in his official capacity and the county are liable for Williams' death. The defendants, assuming *arguendo* that some Lee County employee may have violated the decedent's constitutional rights, argue that they are nevertheless not liable. The doctrine of respondeat superior which generally holds an employer liable for the acts and omissions of its employees within the course and scope of their employment has no applicability in the context of a §1983 action. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). A supervisor or employing governmental entity is almost never found to be responsible for isolated constitutional violations. Rather they are found to be liable only for those constitutional violations that are fairly attributable to "some official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d. 567, 578 (5th 2001). The plaintiff must establish either an official policy, such as a formal written regulation or ordinance that is the direct cause of a constitutional violation, or that a well established though not formally sanctioned practice is "so common and well-settled as to constitute

4

a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d. 838, 841 (5th Cir. 1984) (en banc). The defendants assert that the plaintiff cannot demonstrate a triable factual issue regarding any Lee County policy as a direct cause of any constitutional violation of Williams' rights. They also contend that the plaintiff cannot establish medical causation regarding this inmate's death. Additionally, the defendants have moved to strike certain exhibits to the plaintiff's response to the motion for summary judgment arguing these exhibits are not in admissible form and/or not admissible because of discovery violations. The plaintiff filed a supplemental response placing some of the exhibits in affidavit form.

If the plaintiff is unable to produce evidence to support any one of the essential elements of her claim upon which she bears the burden of proof, any other factual disputes are immaterial. *Geiserman*, 893 F.2d at 793. The defendants assert that the plaintiff is unable to establish any policy of Lee County or the Sheriff, or any actual practice that was a moving force in any denial of Williams's constitutional rights. The resolution of this issue is dispositive.

The plaintiff does not contend that there is any formally ratified policy but attempts to prove triable fact issues in three ways. First, the plaintiff asserts that the record establishes liability based upon the failure to train the employees in the rendering of medical care. The defendant counters that the plaintiff cannot prove this theory because it has not been pled. This is correct, but even if pled the proof tendered cannot meet the standard required to establish municipal liability. In order to establish a constitutional violation for failure to train employees a plaintiff must show "(1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir.

1998).

Neither the Sheriff nor Lee County provided additional formal training to the nurse and a nurse practitioner who were involved in Williams' care. But neither of these individuals are shown to have been unqualified to render care. Each was hired/contracted because already educated and qualified to provide care. The plaintiff also quarrels with the failure to provide training to the "medical officer." The medical officers were corrections officers who were designated to provide non-narcotic medications to inmates. The record establishes that three times a day a cart was taken around the jail to dispense medications to the inmates. The medical officers dispense the medications as they are prescribed by either a nurse practitioner or a physician making sure that the inmates take the medication and sign for them.

In order to establish deliberate indifference on the part of the municipality there must be a showing that some municipal official "disregarded a known or obvious consequence of his action." *Board of County Commissioners O'Brien County v. Brown*, 520 U.S. 397, 410 (1997). To establish deliberate indifference there must be a showing that such official was "both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Smith*, 158 F.3d at 912. A showing of error, negligence, ineptitude or even gross negligence does not suffice. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The proof in this record does not rise even to the level of a showing of negligence for failure to train. The nursing professionals are not shown to have lacked the appropriate credentials for their roles. Any failure to train the nurse and nurse practitioner on the provision of medical care, given their professional backgrounds, cannot rise to the level of being deliberately indifferent in failing to provide additional training. The "medical officers" role is limited. This is not a job that requires

advanced medical training. They in fact received some unspecified training and the plaintiff has failed to demonstrate any advisable much less constitutionally mandated additional training. Any failure to provide additional training to these corrections officers does not as a matter of law constitute deliberate indifference on the part of Lee County or the sheriff.

The plaintiff makes two attempts at showing a pattern or practice regarding medical care services in the Lee County jail. She first asserts that it can be inferred that it is Lee County's actual practice to routinely ignore the serious medical needs of its inmates because sixteen different individuals, both medical and corrections personnel, had actual knowledge of William's condition and nevertheless failed to provide medical care to him in order to prevent his death.

First, it is must be noted that there has not been a complete failure to provide medical care. Williams was provided with Tylenol and Benadryl by the nurse when his allergic reaction first manifested. He was examined by the nurse practitioner who determined that he was suffering from flu-like symptoms and an allergic reaction. The nurse practitioner prescribed treatments for both flu and the allergic reaction, including a shot of Decadron. The plaintiff's decedent was also reported at some point to be suffering from nausea and vomiting. The nurse obtained authorization from the nurse practitioner to administer Phenergan to treat those symptoms.

There is substantial testimony from inmates indicating that Williams' condition thereafter declined during the day prior to and the day of his death. Multiple inmates that they and others attempted to get medical assistance for Williams within the jail and then made calls to the family to alert them to Williams' condition. But even if the record established that each listed employee was deliberately indifferent to Glen Williams' serious medical needs, either during the entire four day period of his illness or during the two days immediately preceding his death, plaintiff cites no

7

authority holding a municipality liable for an isolated incident based on the numbers of non-policy making individuals allegedly participating in the violation of constitutional rights.

A close review of the record shows no proof that many of these individuals were aware of Glen Williams' serious medical needs and no proof of deliberate indifference on their part. The record only establishes that this number of different individuals had some contact with Williams at some point during this unfortunate sequence of events. The court does not reference the involvement of each of these individuals but the following is a sampling of the proof 'against' some of the Lee County employees.

An officer by the first name of Sharon spoke with Sandra Parker about her son Glen Williams. There is nothing in the record to indicate that this individual had any personal knowledge of Williams' condition, any responsibility for or authority to impact his medical care.

The plaintiff mentions that Parker called and spoke with the defendant Jim Johnson, but has already conceded that he has no personal liabilty. Per Parker's testimony, Johnson talked to her and sounded sympathetic. He called her back a few minutes later with a more hostile attitude telling her she was being an overprotective mother. The only inference to be drawn is that the sheriff checked into the complaint and received assurances that the mother's concerns were not merited.

The plaintiff mentions that LeMarcus Betts observed Glen Williams in his cell on Friday morning. There is no proof that Betts knew or recognized Williams' peril or that any action on his part at that late stage could have been effective in saving Williams. There is no affirmative proof regarding whether Betts did or did not attempt to summons medical help. The only other mention of Betts was the testimony of a medicine dispensing officer that Betts had taken Williams' medicines.

8

The plaintiff says Linda Beichler also knew about and failed to aid Williams. There is a reference to a conversation involving Linda Beichler that took place after Williams was found dead. That conversation does not indicate what knowledge Beichler may have had, what inferences she may have drawn from that information or what Beichler did or failed to do in regard to Williams' medical care.

As a matter of fact, the record discloses that at least one inmate quotes Keith Kennedy, the officer accused of profanely stating that he did not care if Williams lived or died, as telling the inmates that he would call the nurse. There is also an uncontradicted statement in the nurse's testimony that someone attempted to call her about Williams' high temperature before his death, but that her cell phone battery was dead.

Valerie Heard, a corrections officer, knew about Williams' condition and attempted to summons the nurse to assist him sometime on the day before he died. This is not deliberate indifference. Her report was shrugged off by the nurse. Heard told Williams she had made a report to the nurse. Williams then told her he thought something was terribly wrong with him and that he was afraid he was going to die. The next day when she found out that he was in fact dead, Heard was incredulous. She tried to help him, but was stunned that Williams had in fact died. She did not appreciate that he was in critical need of medical attention.

Nat Collins, the nurse practitioner, examined Williams on the Tuesday before his death. Nothing in the record indicates that Williams' condition was critical at the time of the examination. Nothing in the record indicates that Williams' examination, findings and prescriptions were professionally inappropriate, much less the product of deliberate indifference. There is nothing in the record to indicate that Collins had any further contact with Williams or that any further report

9

was made to him about Williams between this examination and his death.

In short, the record shows admitted negligence by the nurse, a corrections staff that was told that Williams had the flu, and a sheriff who was apparently assured by his staff that Williams was not seriously ill. There is proof that he received some medical care during his illness, though it did not save him. There is no proof from which a reasonable jury could find that most of the listed personnel were indifferent to this inmates well-being. The record shows that some were without dispute in fact concerned and trying to help. The record establishes an isolated, tragic incident not a pattern or practice for which Lee County and the sheriff may be held liable.

Finally, the plaintiff attempts to show a policy of deliberate indifference to the serious medical needs with a compilation of complaints by other inmates asserting inadequate medical care. One complaint is a now pending 1983 action in this court for the death of an individual who was committed for mental health problems and reportedly died in the jail. The other complaints, sworn and unsworn, are a compilation of complaints ranging from failure to treat head lice and headaches, through failure to provide feminine hygiene products to female inmates, to alleged failure to timely treat diabetes and epilepsy. Each of these complaints are unverified. Each represents only the word of an inmate or their family. There is no showing at this time as to whether there is any merit to any of these complaints. The defense is correct that this is insufficient as a matter of law to establish pattern and practice amounting to an actual, defacto policy of the county.

The Fifth Circuit Court of Appeals found that the plaintiffs in the case of *Peterson v. City of Fort Worth*, 538 F.3d 838 (5th Cir. 2009) had failed to show a sufficient pattern of use of excessive force to establish municipal liability. In that case the plaintiff presented proof of 27 investigated complaints of excessive use of force between 2002 and 2005, four of which the police determined

10

to be proven. A pattern of conduct can be found to be tantamount to official policy of a municipality only when "so common and well settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting from *Webster vs. City of Houston* 735 F.2d 838, 841 5th Cir. 1984 )(en banc)). There must be a pattern of past incidents extending for so long a length of time and repeated with such frequency that it is fair to say that the governing body of the municipality finds the employees conduct to be expected and acceptable. *Webster*, 735 F.2d at 842. Here some of the complaints, such as for failure to treat head lice and headaches are not shown to address serious medical needs. The allegations with regard to treatment of diabetes and epilepsy are vague, with the exception of the death case. They do not allege any serious repercussions to the involved inmates. Even with the death case, many of the allegations are made on 'information and belief." The death case, like the instant case arises from alleged failure to summons medical attention, emergency assistance and/or failure to hospitalize an inmate. These complaints even if they had been verified are insufficient as a matter of law to establish a long-standing and pervasive practice of deliberately refusing to meet the serious medical needs of inmates within the Lee County jail. The defendants are entitled to summary judgment. A judgment in accordance with this memorandum opinion shall be entered.

This the 13th day of December, 2010.

/s/ Jerry A. Davis
U. S. MAGISTRATE JUDGE